Good morning, your honors. Theodore J. Boutrous, Jr. For the convenience of the court, I'm going to refer to my clients collectively as SOC. I'd like to reserve three minutes for rebuttal. There are a number of reasons why the class certification order in this case should be reversed. I'd like to start with the first one that's been conceded. The class was certified for a time period that spans 2006 to 2012. As the court knows, the centerpiece of the class certification order in theory are these call notes, which I'll come back to and explain why they don't justify class certification. But plaintiff concedes, and it's undisputed in the record, that those call notes weren't used or developed until late 2009 and used in 2010. So at a bare minimum, the class certification order needs to be reversed because about half the class weren't exposed to any connection to those notes. There are several other reasons. The most obvious, I think, from the record is that the district court certified the class based on a presumed reliance theory. I don't see that. I actually don't. Both parties say that. But it seemed to me what the court ruled was that the representations made to the recruits were identical and the representation of a 72-hour work week is a material term of employment that any employee would find. I'm paraphrasing, that anybody would find very important. And so reliance would be based on common misrepresentations concerning a key term of employment. So that seems to be a presumption of materiality, but not exactly reliance. I think it is, Your Honor. The finding first that the court is relying on from the language of the court quoted first with respect to the materiality, it's meant to say that it's material, therefore you can presume that every single one of the 4,000 class members would rely on it. That's the predicate for a presumed reliance finding. I guess you may be right about the answer, but I just don't quite see it that it's presuming reliance. I sort of see it as if someone relied on it, it would be identical in every instance because they'd be relying on the exact same thing. But I think it's still a fair point to say, well, even if it's a material term and the spiel is identical, some people may have relied on it and some people may not have cared. So regardless of how you characterize it, I think the point is still available to you. Exactly, Your Honor. Even if we don't think of it as presumed reliance, let me put it in concrete terms in this case. So first of all, Nevada says fraud cannot be presumed. But as Your Honor is saying, the question is, are there individualized issues that would predominate? And let's just look at the two class members who were deposed. Mr. Reisinger, in terms of reliance, couldn't remember if he had heard during the group presentation where the call notes were used any statement whatsoever regarding any kind of limit on hours. He can't remember whether he learned it in a phone call with his recruiter or in an email. So in a trial with him, we'd say, well, what's your proof that you relied on some uniform statement that was made based on these call notes? And there would be none. Well, it's even farther than that, though, because for some, some people might not have cared, which is a whole other question. They wouldn't have changed their behavior. And as I understand Nevada law, it requires you to be able to show that but for this representation, you would have done something different. That's exactly right. And somebody might have said, well, 72, 75, 80, I don't really care. That's exactly right. There's a different basket of motivations and expectations and desires by these individuals. It's different than the kinds of cases where you can presume reliance. And just to give you one more concrete example, Mr. Darrow, the other class member who was deposed, it's not that he didn't care. He says he didn't learn about this limitation until he was in Iraq, boots on the ground, at a shooting range. So he didn't even hear the representation, and clearly it wasn't material to him in terms of some limit on hours. So that's really a fundamental flaw, Your Honor. Think about the thousands of people. The SOC would have the right to ask people if they heard the information. Did they care? Did it matter to them? Would they have gone and taken the job anyway for other reasons? So you can't have a class-wide determination in one stroke that would decide this for all. You couldn't even do it for these two people I just mentioned. And, again, Nevada law is very clear. There has to be proof on every element. And if we look at it as a presumed reliance issue, the district court relied on a RICO decision from a different circuit. This court, in the Poulos case, a RICO case, declined to find presumed reliance, found that it to be a difficult question, and said yes. You keep referring to presumed reliance, and I understand, but it seems like in fraud cases, Nevada hasn't really, it's silent on this, and so do we need to certify this to Nevada? I don't think so, Your Honor, in part because of the point Judge Graber was making, that the materiality. That we can get to the materiality without assuming. Exactly. Assuming reliance. That the court, if the court only went so far as to say, well, we can say it's material, but then the question is, the materiality in this circumstance is so individualized, you can't have a class action. But I do think, Your Honor, there's really no hints from the Nevada Supreme Court that they would adopt this presumed reliance standard. The most recent cases, the J.A. Jones case that we've cited, says fraud cannot be presumed. The case that the plaintiff relies on from 1973, the Johnson case, says if we had to look at the expectations of the party, and it talks about reliance, that would make it impossible to have a class. And it drops a footnote and cites a number of cases, including a couple California cases, but doesn't talk about presumed reliance. It says in some cases, courts have allowed classes to go forward. That was in 1973, and since then, not once has the Nevada Supreme Court hinted that it would adopt the kind of sweeping presumption of reliance that plaintiffs are asking for. So I don't think it's the kind of disagreement or thorny question that would have to go to the Nevada Supreme Court. And as Judge Graber pointed out, if we just look at what the district court held, a materiality, that's just the first step. Then the question is, would it be material based on the motivations and expectations of an individual party? The next issue, and again, this compounds the problem, this is an oral misrepresentation case. And as then Judge Sotomayor said, in the Moore case that we've cited, those cases are presumptively individualized. The district court cited the first alliance case, which is a case from this court applying California law, which does talk about a narrow exception, where there's an extreme situation, where top-down management has had people in a sales pitch, usually for a product, not for a job where you're going to have a continuing relationship, but where there's a memorized script that includes misrepresentations, and they're required, they're trained to give that pitch, and that's it. The situation here is really very different. It's trying to fit a square peg into a round hole. Is that a factual finding on the part of the court, that it was materially identical? And if so, why is it clearly erroneous? Because there was a summary judgment motion attached to all this, too. So there was evidence in front of the court. The court found that there were factual issues, you know, denied summary judgment. Right, right. But in terms of the question whether the pitch was identical, that's outside the context of summary judgment where the court can't make findings. But now we're moving over to class certification, and the court says the pitch was the same. So is that a factual finding? I don't think it is, Your Honor, for two reasons. But then I do think if it is, it's clearly erroneous. First, the court said that the call scripts indicating representations made to recruits were identical or nearly identical. That's different from finding that, as a matter of fact, they were. And the court was, I think, tying it to the legal standards. Is this the kind of situation where you have a standardized pitch, like in First Alliance? He said the representations made to the recruits were identical or nearly identical. And let me just, you know, I think that's a, is it, are they, is the pitch the sort of singular mode of delivery? Well, he said the representations were identical. So whether he used the term the pitch, it doesn't seem relevant. Let me address why it's clearly erroneous, Your Honor. This is not a case where the only exposure the individuals had was to the recruiters using a script. The call notes here, this is undisputed in the record, on the evidence. They were notes in an outline. There was no requirement that they be read verbatim or even that they be used. The individuals had kind of free reign to do whatever they wanted. The recruiters themselves created the notes in order to make sure they were covering all the bases. The other thing, Your Honor, is that the notes themselves do not include the misrepresentation that's at the center of the case. Well, you know, all of that seems to put blinders onto the fact that the contract between your client and the United States provided that there wouldn't be more than 72 hours a week. So the idea that that was told to the recruits is more than plausible, isn't it? It's absolutely more than plausible that recruits were told that they usually be working a 72-hour week. But it's not usually. The contract says no more than. The contract does say that, but there's no evidence that the recruiters were looking at the contract or that the individuals were looking at the contract. No, but you're arguing that it would have been clearly erroneous for the court to have concluded that they were told what the contract required of your client. So it just seems not a stretch. Well, let me look at it this way, Your Honor. The call notes themselves don't include the contractual language from the Department of Defense. There's also the record that's undisputed in this fact that when the U.S. knew that there were understaffing issues and they were trying to provide security, it's a unique situation that the government said, you've got to man those posts, and the company wanted to give people a day off. And so on that front, Your Honor, that's a factor. But let me go back to the disclosures. There were other means of communication. As I said, this wasn't a one-time deal. There were the disclosures. Even if we assume they were somewhat uniform, there were other discussions. And as I said, Mr. Reisinger says he may have learned about this in a phone call, in an email, episodic communications. We'd have to know what every person knew, what they learned, what they heard, and if they relied on it. And you just can't have a class action under those circumstances. It has to be a very strictóI'm sorry, Your Honor. But you agree we have to make a determination whether the district court clearly erred in that determination? I think even if the court accepts that determination. Okay. Then it looks like the district court relied on the testimony because, I mean, you're picking certain aspects of what the district court relied on, but it seems like the district court relied on the testimony from SOC employees in conjunction with copies of the call scripts. As to the former evidence, I think Mr. Bogart testified that all recruiters used the same script to touch all the points, that the script included a 72-hour work week with one day off per week, and that this information was recited to recruits. It looks also that Mr. Santon testified recruits were told it was a 72-hour work week, six days, 12-hour days. And then McCravey testified it was SOC's intention to limit the work week to that schedule. As to the latter evidence, it seems the call scripts described 12-hour shifts, six days on, one day off. And I know you point to certain other points. I just don't know if it's enough to counterbalance and to say that the district court clearly erred. Well, I think if we just assume that those issues that first Mr. McCravey, for example, testified also that the recruits knew that they were under staffing problems and they might have to work more. Mr. Bogart said he hoped everyone else was using the call scripts. The plaintiff has made some bold statements that go far beyond the record in this case. There were no instructions to use the call notes. Mr. Bogart was testifying about what he knew about how he operated. But if we're going to look at the written documentation, the frequently asked question sheet said 12-hour, six days a week, but these are subject to business needs and operational requirements. And it was clear that there were phone calls, Q&As. This wasn't the kind of standard pitch where what was said, here's the general rule, that was it. There were other discussions. So we don't know what each individual knew and what they found important and what they relied on. I see my ‑‑I'm getting towards ‑‑ You may reserve the rest. Thank you, Your Honor. Thank you. May it please the Court. Scott Geiser on behalf of Plaintiff Annapolis, Carl Rissinger and those similar situated. The district court's order granting class certification should be affirmed because it did not commit clear error. Is that our standard of review for class certification? Sorry, it's an abuse of discretion standard, and then you go down from that as far as the things that need to be looked at on whether or not there was an abuse of discretion, whether or not the court considered an improper factor, omitted a factor, or when mulling the various factors, made a clear error in judgment in its analysis. Well, Tim, just speaking for myself, it seems to me that your fraud claim is quite different from your contract-based claims because, as I understand Nevada law, the false representation has to play a material and substantial part in leading the individual to adopt the course of action that they adopt. And that seems very individual because if someone had been told, you know, truthfully, you know, you're going to work 80 hours instead of 72, they may have said, I don't care. And so I don't really see how that's susceptible of class treatment as distinct from the contract claims, which is this is the contract, and it says what it says, and they either follow it or they don't because it doesn't, that sort of individual personal viewpoint doesn't matter. And I understand what the court is saying, and I heard the exchange you were having with Appellant's counsel, and the court is correct that the district court doesn't actually use the word presume or actually even use the word infirm. What the district court says is there's circumstantial evidence upon which a fact finder could conclude that there was justifiable reliance. But it's different in every instance because let's assume that the same false statement was made to every person and that it would be potentially material, but it may be my misunderstanding of Nevada law, but I don't, you know, I remain to be educated on that, but it seems to me that you have to demonstrate that it leads the plaintiff to do what they did and that but for the false representation they would have done something different, and that seems very individual to me. Well, Nevada law follows the substantial factor test on reliance. If you read the McDonald-Palacios 2016 Westlaw, substantial factor is the same thing as California. This court in first reliance actually acknowledged and cited the fact that the Vasquez court or California relies on the substantial factor test for justifiable reliance in a fraud claim and then went ahead and affirmed class certification based upon circumstantial evidence that allowed the inference of substantial reliance. It's the exact same thing that we're facing with here, and it's the reason why and really the controlling cases here, it's Johnson and Meyer. Johnson was the first case from Nevada that the Nevada Supreme Court on class certification regarding fraud, and that was the one where the Nevada Supreme Court said as a general proposition, it's hard to certify a fraud class because of what Your Honor is saying, there's individualized issues. But then they go on and say that's not to say that a fraud class can never be certified, and then they provide a footnote and they cite a series of cases from different jurisdictions wherein a fraud class was certified, one of them being the Vasquez case. So you have the Johnson court specifically referencing a fraud class case that was certified based upon inferred reliance. You then have the Meyer court, which comes later, and they refer back to Johnson and they say it's very important to note and to paraphrase that the reason the Johnson claim was not certified is because there wasn't a common thread of fraud. What would be the practical result if, and I know you don't agree with this and my colleagues may not agree with this, but if we were to hold that the contract-based claims were properly certified but the fraud claim was not, how would that play out? I mean, the class would then proceed on the contract claims at that point, and the fraud claim obviously would not. We'd have to decide what to do with it, because Mr. Richinger would still own that as an individual claim, but most likely the contract claims would proceed at that point. But I think it's important, and there's a very good analysis done in the CGC matter out of the Tenth Circuit and the Clay matter of the Eleventh Circuit where they talk about this proving reliance based upon circumstantial evidence, and what they talk about in the predominance factor, because that's what we are talking about here today, is you are going to try and prove reliance based upon common evidence. That is what is being submitted here, is common evidence of common general circumstantial evidence. That can then attempt to be rebutted, and then a fact finder is going to determine based upon what it's heard either that there was reliance based upon the circumstantial evidence or there was not. Whether or not you may be able to point, and actually this court in the Barack v. Blackie case actually did an analysis where just because there's going to be individualized issues in rebuttal, because there's not going to be individualized issue in our case in chief, it's going to be in the rebuttal. And in the Black v. Blackie case from this circuit, this court said that the right of rebuttal does not preclude predominance of common questions. That the appellants might be able to defeat reliance as to a few class members does not transform a common question into an individualized one. That's exactly what we have here. And what's important is the Peterson and H&R Block case out of the Northern District of Illinois did a good job. What is being raised here is conjecture, hypotheticals about what people may have done. Someone might not have relied upon this. They may have gone a different about. We have nothing in the record to support that. Mr. Rissinger himself who said. Well, we have nothing in the record to support the opposite either, really, because you don't know whether somebody says, well, gee, it was only going to be 73 and I don't care, or I don't care anyway, or I didn't hear it because I wasn't listening. What evidence can you point to, I guess, in the record that shows the strength that you claim might be present with respect to materiality? Certainly. The first thing I would point to would be Ms. Santine's testimony, who is the 30B6, the HR representative. And I asked her, I mean, this is at 283, ER 282 through 284, and I asked her the question of you would agree with me that working six days a week is very different than working seven days a week, and she agreed with that. And I then asked her the follow-up question is you would agree with me that someone would want to know if they were working six days a week versus seven days a week, and she said yes. So their own witness admits that this is something important. You can then go to the call scripts that they provided, and the call scripts are, let's see, ER 702 through 806. One of the frequently asked questions was are there legit days off? So this question came up so much that they added it into their call scripts, and you know what was going to be asked is is there a legit day off, and the answer was yes, there are legitimate days off. The schedule is 6-12. So we have this evidence in the record, and I think this is where it gets to the clear error of judgment issue. Is it implausible, illogical for the district court to have drawn this conclusion, and based upon basically the admissions of the defendants, no. Then you have on top of that the declarations of the various witnesses, ER 191A through 191B, and then SCR 117 through 141. These are all the witness declarations that say this was a representation that I took when I accepted the job, that I was going to work 6-12. So there is ample evidence in the record for a fact finder, and that's really what it is, is could a fact finder rely on this evidence and conclude that there was justifiable reliance in this situation? We're not getting to the merits. I mean, we may go to trial. But you're skipping over actual reliance. In other words, you're saying, yes, it would be justifiable if people relied on it, but how do we know that they did? I guess that's really my question. I agree with you that it would be justifiable, and it would be important to know and all of those things, but don't we still have to know whether they did? What's interesting about employment cases, employment class cases, is people make decisions to secure employment, accept offers for different reasons. Correct. So isn't that a problem here? And maybe in a typical employment situation, I might agree with that. This is obviously a very unique situation, which I think everybody is acknowledging this. You know, Mr. McAreeby refers to this as going to work in an austere location. You know, people die doing this job. This is not the normal, you know, I'm going to be a dealer at a casino or something of that nature. People are putting their lives on the lines. The Department of Defense said it is critical that these people do not work more than 72 hours a week to preserve their energy and so that they don't get exhausted and endanger themselves any more than they already are. So you have ample evidence in the record on that. But, again, you can prove actual reliance based on direct or circumstantial evidence. And in the Vasquez case, it was at 814, the California Supreme Court noted that oftentimes circumstantial evidence is far more powerful and compelling than direct evidence because you put a plaintiff on the stand and say, did you rely on this? Yes. Okay, well, that's a fairly self-serving statement, you know, that any plaintiff is going to make. When you look at circumstantial evidence, which is usually objective and unbiased, and in this case is coming from the defendant, that is far more powerful onto the issue of whether or not somebody actually relied. And so this, again, I believe gets back to the issue of we're talking about what an actual fact finder might find at trial, and they may say your common evidence that you provided is insufficient and therefore you lose, but that doesn't mean that we lack predominance. I think it was in the Vioxx case, though, it seems that consumer class action and misrepresentations made about prescription pain relief drug in the California Court of Appeals conclude that materiality could not be presumed because the decision to prescribe the drug is an individual decision made by a physician reliance on many different factors from which vary from patient to patient. So how do you distinguish that from this kind of an employment case, even though it's specific employment? Right, and I've read the Vioxx decision and I understand that, and I think you would go to this. And, again, these are all very case-specific type of situations. You know, when taking a drug, there's a benefit to obviously taking the drug versus the potential side effects. And someone may say, well, you know, I have an affliction, so the benefit that I'm going to get I'm going to go with as opposed to the potential side effect that may occur. But in this situation where everybody has determined, and nobody is disputing this, that this is something that is critical. You cannot work these people more than this because that is going to put their lives in danger. It's a substantial factor. Everybody says somebody is going to want to know that when they're making the decision on whether or not to accept employment because it's not, you know, to Your Honor's point, it's not that they're working 80 hours a week versus 72 hours a week. It's that they're never getting a day off. You have to look at it in that sense. It's not that I'm going to work six days instead of seven days. It's meaning I am going to work unless I decide to take a vacation a whole year without taking a day off. That's the context and what you have to look at. So you rely heavily on the call script that SOC recruiters use, but the record shows that for the half of the class period from 2006 to 2009, and I think it was just highlighted by your colleagues, these scripts did not even exist and the district court seems to have concluded that issues predominated during the first half of the class period. So isn't that problematic? It's not in that, and I think we brought this up actually in our brief. We certified the class of that entire time period because that's what the statute allows us to go back to, but the interrogatories which are in the record, there are no guards before the call scripts were developed. So it's kind of a red herring. There are no scripts. Well, it wouldn't matter to you if we went back and said after call scripts because it wouldn't matter. Yes, if you wanted to redefine the class to the end of 2009, that's fine because there's no class members that exist apparently before that based upon their verified responses. So if the court wants me to address, we basically have two issues that have been raised here, which is predominance and manageability or superiority, and I don't know if the court wants to get into those issues, but certainly the superiority issue that was raised, basically there was two issues. One was the amount of recovery and whether or not because the amount of recovery was larger, if this is proper for class certification. As an initial matter, because the vacation pay was taken out, that drops the claims down to, I think, around $40,000. But I think what's important here is because we're not operating under a Nevada statute or anything that would provide for attorney's fees, you're talking about a $40,000 recovery is the maximum that you're going to get. Going up against what they define in their own call scripts is a $2 billion conglomerate. The potential to recover versus the cost of litigation is going to be one of those negative value type situations, which is why you don't see any litigation on this issue. So I don't think the dollar amount is anything that weighs in favor of denial of class cert. On manageability, it's kind of arguing the predominance issue again. It's effectively the same arguments, but there's two cases that we cited in our brief, the Garner v. Healy case, which is out of the Northern District of Illinois, and the in-race sugar industry antitrust case out of the Eastern District of Pennsylvania. And what they talked about is if there is going to be this issue of individual reliance raised, you can phase the trial if you really want to. You can have the first three elements dealt with in one phase, and then you can have the individualized issue of reliance to the extent it's going to exist in a second phase and manage it that way along with damages. It's not very complicated to ask basically the series of questions of, you know, did you rely on this or did you not? There's nothing difficult in managing that kind of a class structure. And the last thing that I want to hit on I guess is the Rules Enabling Act, an Article 3 standing issue that was raised because the appellant just submitted a supplemental citation two days ago. Again, this court noted I think they're misinterpreting what our position is. We're not saying that it's okay for an injured person to collect money at the end of the day. What we're saying is this is kind of a premature topic to bring up. The class may include those people now, but when you go through the trial, those people get ferreted out. You will have a damages phase where if somebody didn't work more than the 612s, then okay, that person's not going to collect any money. But as far as the reliance issue, again, you can deal with it in this phase issue that way, or if the fact finder says no, based on the evidence before me, I believe that the class relied on this representation. Another way to deal with that is to define the class as those persons who worked more than the 612. Yes, correct. Because that defines the non-injured out of the picture. Right, and it's very easy to deal with because it's in the record. We have the timesheets that show exactly what everybody actually worked that was signed off on them, and you can go through those timesheets and say, okay, so this person worked more and this person didn't. I see that I've gone over, so thank you, Your Honor. Thank you, Counsel. Thank you. Mr. Boutros, you have some time remaining. Thank you, Judge Graber. I'm going to pick up with a question you asked, what would happen if you left the contract claim in the case? There would be even more individualized issues. Here, the contract doesn't include a provision regarding the work week. The district judge found that it would be possible, that it would be a factual issue, that the plaintiff would be able to argue at trial that the provision regarding employee responsibilities that says they would be responsible for duties and responsibilities customary for the role, subject to also additional duties being imposed by the company. So it made clear the company could add additional duties. But the key here is the court held that extrinsic, because it was ambiguous under Nevada law, extrinsic evidence comes in to determine the true intentions of the actual parties to the contract. And we cited the Shelton case, which is a great example. The court there said, this is the Nevada Supreme Court, that when it's ambiguous and extrinsic evidence comes in, then the declarations of the parties, the statements of the parties, the course of conduct and performance by the parties is relevant. So let's bring it to this case. With just respect to Mr. Reisinger, he performed under the contract, just like Mr. Shelton did. Mr. Shelton, it was a divorce case, and they said, well, you paid this amount, so that must have been your intent. Mr. Reisinger performed for four months, took a vacation, went back to Iraq and gave him credit for that, went back to keep working. When he resigned, he sent a nice letter saying how honest the company was. Those are the kind of facts in an individual case that would be tried, and that would have to be replicated 4,000 times in a class action trial over contract law. Mr. Darrow, the other gentleman who was deposed, he doesn't claim that he learned this information, that it was in his mind when he signed the contract. Okay, now you're segueing back to fraud. That would go to the intent of the parties, though, that you would ask Mr. Darrow, now when you signed the contract, did you view this provision that the district judge found was ambiguous to mean that you would only work, you could never be required, and not everyone worked seven days a week. That's just incorrect. The record doesn't cite that. But that would be the kind of inquiry, and as the Court is well aware, the Supreme Court in the Tyson Foods case and the Dukes v. Wal-Mart case said you can't change the standards because it's a class action, and both sides have the right to put on the evidence. They would in an individual trial. If there's a common course, if there's a commonality, if there was a clear provision in the contract and it wasn't ambiguous, maybe we'd have a different story. But the Court found that it was a phantom, the provision floating around the contract. So the trial in just an individual case would be, is that phantom real? Is it part of the contract? And that involves very individualized evidence that would make a class action unmanageable, inappropriate. It would cut off the SOC's right to defend itself and therefore would violate the Rules Enabling Act and Rule 23. Thank you, Counselor. Thank you very much. The case just argued is submitted, and we appreciate the helpful arguments from both of you. Thank you.
judges: Graber, Murguia, Davila